### 10760. QUINAN v. STANDARD FUEL SUPPLY COMPANY.

JENKINS, P. J. 1. Where a corporation contracts with an individual exercising an independent employment, for him to do a work not in itself unlawful or attended with danger to others, such work to be done according to the contractor's own methods and not subject to the employer's control or orders except as to results to be obtained, the employer is not liable for the wrongful or negligent acts of such independent contractor or of his servants (Civil Code of 1910, § 4414;

*Atlanta & Fla. R. Co.* v. *Kimberly,* 87 Ga. 161, 13 S. E. 277, 27 Am. St. Rep. 231; *Fulton County Street R. Co.* v. *McConnell,* 87 *Ga.* 756, 13 S. E. 828; *Ridgeway* v. *Downing Co.,* 109 *Ga.* 591, 34 S. E. 1028); and the mere fact that the employer may have had an agent who supervised the work for the purpose merely of seeing that it was done in conformity to the contract, without interfering as to the particular method in which it was to be done or the means by which the given result was to be accomplished, would not in law be such control and direction of the work by the employer as would render him responsible for the manner in which the work was done. *Harrison* v. *Kiser,* 79 *Ga.* 588 (4 S. E. 320); *Louisville & Nashville R. Co.* v. *Hughes,* 134 *Ga.* 75 (67 S. E. 542). But the employer is liable for the negligence of the contractor if he retains the right to direct or control the time and manner of executing the work, or interferes and assumes control, so as to create the relation of master and servant. Civil Code (1910), § 4415; *Savannah &c. R. Co.* v. *Phillips,* 90 *Ga.* 829 (17 S. E. 82); *Johnson* v. *Western & Atlantic R. Co.,* 4 *Ga. App.* 131 (60 S. E. 1023); *International Agricultural Corporation* v. *Suber,* 24 *Ga. App.* 445 (101 S. E. 300).

2. Applying the foregoing rulings to the proof submitted in this case, together with all reasonable deductions and inferences to be drawn therefrom, it was a question for the jury to determine whether or not the alleged foreman and alter ego of the defendant was in fact such, or whether he was, as contended by the defendant, an independent contractor; and if the latter, whether the defendant retained, or interfered and- assumed, the right to direct· and control the time and manner of executing the work. The court therefore erred in directing a verdict for the defendant upon the theory that the alleged injury was inflicted by an independent contractor.

*Judgment reversed. Stephens and Smith, JJ., concur.*

DECIDED MARCH 11, 1920.

Action for damages; from city court of Savannah — Judge Freeman. May 27, 1919.

W. J. Quinan sued the Standard Fuel Supply Company, a corporation, for damages on account of personal ·injuries, alleged to have been caused by negligence of one Powers, who it was alleged was the vice-principal and alter ego of the defendant, and the negligence of others working under his orders. It appears that the plaintiff was an employee of the American International Shipbuilding Corporation, and at the time of the injury was engaged in checking certain piling which that company had contracted with the defendant to unload from cars, the alleged improper and negligent unloading of which the plaintiff contends caused the injury. The defendant contended that Powers, its alleged vice-principal, was not in fact such, but was an independent con-

tractor on the work and in the exercise of an independent business, and was not subject to the immediate direction or control of the defendant, and therefore that the defendant was not liable for negligence on the part of Powers or his servants. Upon this issue the following evidence was introduced: The plaintiff testified: "Mr. Powers was looking after the work there as foreman for the Standard Fuel Supply Company. The contract was taken away from Ramsey and given to the Standard Fuel Supply Company and Mr. Powers came there as foreman of the job. The men were working under his direction. . . The Standard Fuel Supply Company were doing this work. I knew Mr. Powers was in charge as their foreman. I knew Powers was foreman because Mr. Ross, chief in charge of the American International Shipbuilding Corporation that I reported to, he told me the Standard Fuel Supply Company had taken over the contract. The darkies were all under his direction. He was the man who gave them directions. Mr. Salas [president of the defendant company] visited the dock two or three times a day and conferred with Mr. Powers. Mr. Salas was not giving the darkies any directions. I never saw Mr. Salas give anybody instructions. Mr. Powers was the only man giving instructions to men on that particular work. . . I knew Mr. Powers as a wharf builder and contractor all my life. I knew he had taken other jobs for Mr. Salas, and that he had taken jobs for himself. I know the relations between them by the pay-roll of the Standard Fuel Supply Company showing Mr. Powers as their foreman. I did not know so definitely at the time. I knew Mr. Powers was in control of the work, but I was not told that the contract was turned over to Mr. Powers, but to the Standard Fuel Supply Company." W. H. Patterson Jr. testified: "I was with the government. . . That is my signature to a contract between the government and Mr. Salas for unloading this piling and loading the vessel. Mr. Powers was down there as Mr. Salas' foreman, and when I had any instructions for Mr. Powers, I was compelled to communicate them through Mr. Salas. When I went to him he would say 'Tell Mr. Salas and he will tell me.' I knew Mr. Powers in the contract as Mr. Salas' foreman. I made this contract on behalf of the United States Shipping Board with the Standard Fuel Supply Company. I knew Mr. Powers was in charge of the work. I saw him there every

4

day.  I knew nothing about the arrangement between him and Mr. Salas except as stated in the bill.  My information is that he was not an independent contractor.  I don't know the arrangement between them for doing this work.  I knew nothing about their private arrangement.  Mr. Powers actually directed the work.  I had no contract with Mr. Powers.  I know absolutely nothing about the contract or relation between Mr. Salas and Mr. Powers.  I have known Mr. Powers probably twenty-five years.  I have known him as a contractor.  When I would approach Mr. Powers he would tell me to see Mr. Salas.  Mr. Salas told me nothing about the arrangement. . . I had supposed Mr. Powers was foreman at all times.  If the contention is that Mr. Powers was doing the work as a subcontractor, I see no reason why they should put him down as foreman. . . This bill was rendered by the Standard Fuel Supply Company.  I O. K.'d that bill as correct according to his say so. . . This contract provides for compensation to the Standard Fuel Supply Compa at $1.37½ a piling by the piece. . . This bill for 2,000 or 1,800 represents Sunday work.  The Standard billed us for $1.37½ plus one-half of that, and I objected to it.  I told him I wanted the bill based on the actual cost of the labor.  I paid the Standard for it.  It was charged for at the rate of $12 a day, but that was after the work was over. . . I don't think he [Powers] would be put down as foreman if he was a subcontractor.  If he was put down as subcontractor I don't suppose his time would have been paid for, but they might have used some other method.  I have no interest in it at all.  I am speaking of the bill in black and white.  I understood Mr. Powers as foreman, first, last, and all the time.  If I thought the work was not going fast enough, or wanted a little extra work done, and if Mr. Salas happened to be in New York, I had to wait to see him.  Mr. Salas did not give any orders within my hearing as to the mechanical details, as to how the work should be done.  When he came there I was not with him.  When I complained about the work not being fast enough, Mr. Powers would tell me to see Mr. Salas."  The plaintiff introduced in evidence the contract between the defendant and the United States Shipping Board, and a bill rendered by the defendant to the American International Shipbuilding Corporation for work performed on Sunday, containing an item as follows:

"D. Power, foreman, two Sundays at $12.00, $24.00."

David Powers, in behalf of the defendant, testified: "I am pile-driver, wharf builder, and sometime stevedore. I have been in business for myself some twenty-one or twenty-two years. I recall this particular contract under which I was working at this dock with Mr. Salas. The contract was that Mr. Salas would furnish the money and two big lighters, I to furnish everything else, on a fifty-fifty basis, I to get half the profits and bear half the losses if any. I employed the men. I discharged them. The Standard Fuel Supply Company didn't have a thing to do with that. All correspondence was done with Mr. Salas, Standard Fuel Supply Company. I paid the men off on Saturday, either at the dock or at Tom Curry's. They did not state who I was to hire or discharge; I had full right of way on that. On this bill on which I am put down as foreman I did not get that money. I have not settled up on this case yet. I am to get one-half. We worked on a fifty-fifty basis. . . I am not Mr. Salas' foreman. I never was his foreman in any of this work — that's according to my contention. At no time was I foreman from the time I took this subcontract with the Standard Fuel Supply Company up to the time this man was hurt, except it was stated on that bill. I ought to have something for my services. He billed the government per piling first, and they objected to that, and said to send in actual labor. He put me in as foreman. . . He told me that he was going to furnish the money and turn the balance over to me. He had nothing to do with anything else. We did things for Mr. Patterson until I found him undermining me with another stevedore, and after that I says, 'Mr. Patterson, you go to Mr. Salas — he is the boss of this proposition.' He was fixing up that I was not competent, and wanted to get somebody else. I did that after I found him out." R. S. Salas, sworn in behalf of the defendant, testified: "I am president of the Standard Fuel Supply Company. I made this contract with the United States Shipping Board. . . I talked with Powers, and he said he would take the job on a fifty-fifty basis. He has been in the contracting business for twenty years to my knowledge. Not in years has he been foreman for me. He has done joint contract work of this kind. Under the contract I furnished two lighters and the money. I had nothing to do with the employment or discharg-

ing of the men. I had nothing to do with the actual work. I went there once or twice a day to keep Patterson straight. He was very contentious. It was the only way to keep the bill correct for the government to put him in as foreman on Sunday. They would not work on Sundays for the wages they got every day in the week. There was no way except to charge for every man actually engaged on the work. Mr. Powers was one of the men. Our contract calls for fifty-fifty, and that goes into the general fund of the earnings and losses of the transaction — it was absolutely fifty-fifty. Powers was to get half the profits and bear half the losses. He was a partner of mine. I financed and let him have the two lighters. . . I had to put him on there as foreman. I could not get pay for his work on Sunday otherwise. How could I do otherwise? How am I going to let men work there and not charge for it? It was a verbal agreement for Sunday work; this was extra work. That contract is for week-day work — there is nothing in there about it. The Shipping Board called for Sunday work. They said, 'We will pay you for all men working there Sundays.' I made the contract with Patterson — United States Shipping Board. . . The contract was based on the piling and this was based on the work. That contract did not cover Sunday work. Patterson said, 'The only way I will settle is per hour for each man.' "

At the close of the evidence the court directed a verdict in favor of the defendant, on its motion based upon the ground that the evidence showed that the injury in question was inflicted by an independent contractor and the defendant was not liable.

*Shelby Myrick,* for plaintiff.

*Lawton & Cunningham,* for defendant.