14477.  UNITED STATES FIDELITY & GUARANTY CO. *v.* CORBETT *et al.*

The evidence in this case shows that the workman, for whose death compensation, under the workmen's compensation act, was sought, was not an employee of the insured company in the work in which he was engaged when he was killed, but was an employee of an independent contractor.  The superior court therefore erred in sustaining the award against the insurance company.

DECIDED OCTOBER 3, 1923.  REHEARING DENIED NOVEMBER 14, 1923.

Appeal; from Berrien superior court—Judge Dickerson.  January 6, 1923.

*Bryan & Middlebrooks, W. D. Buie, W. R. Tichenor,* for plaintiff in error.  *John P. & Dewey Knight, Homer E. Oxford,* contra.

LUKE, J.  Mrs. Fannie Corbett brought proceedings under the Georgia workmen's compensation act against E. C. Bruce, Berrien Lumber Company, and United States Fidelity & Guaranty Company, to procure an award for the death of her husband, C. E. Corbett.  The Industrial Commission found: that Bruce was not a subcontractor, and was little more than an employing foreman; that Berrien Lumber Company was the real employer of the de-

ceased; and that an award be had against United States Fidelity & Guaranty Company, the insurance carrier for the lumber company, in favor of Mrs. Corbett, for herself and her two minor children, in the sum of $5 a week for three hundred weeks, and for burial and medical expenses. The case was appealed to the superior court, and Judge Dickerson, to whom the entire matter was submitted by agreement, sustained the award of the commission.

We will recite only so much of the evidence as is necessary to a clear understanding of the case. Berrien Lumber Company was operating a sawmill, of which J. M. Willis was manager. Located adjacent to the mill and on the same premises was a lath and shingle mill owned by said company, and engaged in manufacturing laths and shingles from slabs and scrap-timber from the sawmill. This shingle mill was operated by E. C. Bruce and his employees. Corbett was killed while engaged in his duties in operating the lath-making machine. Willis testified to the following oral contract between the lumber company and Bruce: "The Berrien Lumber Company furnished the machinery and material, and Mr. Bruce furnished the labor, and we divided what we made fifty-fifty." The lumber company's compensation insurance included all the workmen of the mill except those employed by Bruce. Bruce's impression was that he was to have control of the lath and shingle mill until January 1, 1922, but the lumber company shut down that mill on September 1, and it was not afterwards operated by Bruce. Bruce also thought the lumber company had the right to terminate his contract at any time and discharge him, but Willis swore that as manager of the lumber company he had no such right, unless Bruce refused to operate the mill. Willis further testified that he did not consider that he had the right to give Bruce instructions as long as he complied with his contract, and that he never had any occasion to criticize or advise him. The lumber company usually sold the output of the lath and shingle mill and gave Bruce one half of the proceeds. Occasionally Bruce sold some of the laths and shingles himself, but, as a matter of fact, each had the right to take one half of the products of the lath and shingle mill and sell them, and neither, as a matter of right, could sell the laths and shingles of the other. Bruce swore that he discussed with Willis the best manner of operating the lath and shingle mill, but that he supposed he was the final authority

as to running that part of it; that as to the furnishing of timber and the manner of handling it, the lumber company would probably be final authority, but that he supposed he had sole direction as to laths and shingles. Bruce hired, paid off with his own money, and controlled the workmen at the lath and shingle mill.

It so clearly appears to our minds that Bruce was not a sub-contractor of the lumber company that we shall not discuss that proposition. The controlling and only question for us to consider is: Was Bruce a mere servant of the lumber company, or was he an independent contractor? If the former, the recovery against the insurance carrier was warranted; if the latter, there could be no recovery. It must be confessed that this case is not without difficulty. There are many indicia which are indicative but not conclusive as to the relationship between employer and employee; as, for instance, control of the premises by the employer, his power to terminate the contract, the mode and time of payment for the work done, and the furnishing of the workmen and appliances. It has been said that "The relation of master and servant exists whenever the employer retains the right to direct the result to be accomplished, or, in other words, not only what shall be done, but how it shall be done." Singer Mfg. Co. v. Rahn, 132 U. S. 518 (1) (33 L. ed. 440) ; 26 Cyc. 966. It was stated in *Lampton* v. *Cedartown Co.,* 6 *Ga. App.* 149 (64 S. E. 495), that "independence of control in employing workmen and in selecting the means of doing the work is the test usually applied by the courts to determine whether a contractor is an independent one or not; and this is the test applied by the statute of this State, supra." That statute is section 4414 of the Civil Code (1910), which is as follows: "The employer generally is not responsible for torts committed by his employee when the latter exercises an independent business, and in it is not subject to the immediate direction and control of his employer." And see § 4415. The decision in the *Lampton* case, supra, quotes from Wood's Master & Servant, § 593, as follows: "When a person lets out work to another to be done by him, such person to furnish the labor, and the contractee reserving no control over the work or workmen, the relation of contractor and contractee exists, and not that of master and servant." "The fact that the contractor employs, pays, and has full power to control the workmen is practically decisive of his independence." 14 R. C. L.

71, sec. 8. In the same volume it is succinctly stated (p. 68, sec. 4) that "The control of the work reserved in the employer which makes the employee a mere servant is a control not only of the result of the work, but also of the means and manner of the performance thereof; where the employee represents the will of the employer as to the result of the work, but not as to the means or manner of accomplishment, he is an independent contractor."

The oral contract itself does not indicate the relation of master and servant between the lumber company and Bruce, and their relationship must be determined by that contract as construed in the light of the evidence. As we see it, the evidence fails to disclose that the lumber company exercised such control over the conduct of the lath and shingle mill as would make of Bruce its servant, and leads strongly to the conclusion that the lumber company was interested only in the result of the work. Again, it is undisputed that Bruce employed, paid, and had full power to control, and did control, his workmen. We must therefore conclude that the relation of master and servant did not exist between Berrien Lumber Company and Bruce. It follows that the judgment of the lower court in affirming the award of the commission was error. *Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*