### 17394. ZURICH GENERAL ACCIDENT & LIABILITY INSURANCE COMPANY *et al. v.* LEE.

1. Where one "contracts with an individual exercising an independent employment, for him to do a work not in itself unlawful or attended with danger to others, such work to be done according to the contractor's own methods and not subject to the employer's control or orders except as to results to be obtained, the employer is not liable for the wrongful or negligent acts of such independent contractor or his servants." *Quinan* v. *Standard Fuel Co.*, 25 *Ga. App.* 47 (102 S. E. 543); Civil Code (1910), §§ 4414, 4415. The same rule is applicable under the provisions of the workmen's compensation act. *U. S. Fidelity & Guaranty Co.* v. *Corbett*, 31 *Ga. App.* 7 (119 S. E. 921). While, under the Georgia statute and decisions, the test to be applied, in determining the relationship of the parties under the contract, lies in whether the contract gives, or the employer assumes, the right to control the time and manner of executing the work, as distinguished from the right merely to require results in conformity to the contract, there have been foreign decisions suggesting that the fact that under the agreement the employer may at any time terminate the contract is one to be considered in determining whether or not, under such circumstances, the employee is an independent contractor or merely a servant, but the rule under those authorities appears to be established that such a right to terminate the undertaking could not in any event be of itself sufficient to establish the fact that the employee is a mere servant and not an independent contractor. 39 C. J. p. 1322, § 1525; 42 A. L. R. 616, III a.

2. In the instant case it indisputably appears that the defendant, after discontinuing the operation of his sawmill upon his own premises, turned over his machinery to another, under a contract whereby the other person was to use the defendant's machinery, at his own cost and expense, in converting the defendant's timber into lumber, receiving therefor a stated price per thousand feet of lumber. Under the agreement, it appears, the defendant was to advance and did advance to the person thus operating the mill sufficient funds for him to pay off the workmen employed by him in executing the contract, such advances being charged against the compensation to be paid under the terms of the agreement, the defendant, however, not being ultimately responsible for any sum greater than the agreed price for sawing the timber. It indisputably appears that the second party to the agreement had exclusive

Master and Servant, 39 C. J. p. 1315, n. 1; p. 1318, n. 7, 10; p. 1319, n. 40; p. 1321, n. 68; p. 1322, n. 71, 83, 86; p. 1323, n. 88; p. 1334, n. 11. Workmen's Compensation Acts, C. J. p. 50, n. 62; p. 135, n. 41 New.

control over the manner and method of executing the work, including the hiring, discharging, and paying of the help, and fixing their compensation, the net profit or loss accruing to such party being determined by the difference between the amount received for the sawing and the cost of executing the contract, including the return of all such pay-roll advances. *Held:*

(a) As to whether the relationship of subcontractor existed between the defendant and the second party to the contract, the evidence is extremely meager, the only testimony in any wise relating to that question being that the defendant testified he was under agreement to operate the mill and saw the timber. The most that the evidence on this line might seem to indicate is that the defendant had sold his lumber ahead; there is nothing to indicate that he had ever operated the sawmill for another. But, however this might be, the case is not maintained under the provisions of section 20 of the workmen's compensation act relating to subcontractors, and there could in no event be a recovery in the present action against the defendant on that theory, since that section of the act specifically provides that "every claim for compensation under this section shall be in the first instance presented to and instituted against the immediate employer."

(b) The relationship between the defendant and the second party to the contract can not be adjudicated to be that of master and servant on the theory that the latter was to receive compensation for "piece work," such not being the agreement. While it is true that the second party to the agreement was to receive a stated gross sum per thousand feet of lumber sawed, such amount did not represent his compensation as wages in the way of "piece work," since the timber was to be sawed at the expense of the second party, he to receive only such actual compensation as the net profits of the enterprise conducted by him and at his expense might show.

(c) Under the agreement outlined, the fact that the defendant was to furnish to the other party his own machinery, with which the latter was to do the work, would not prevent the status of the latter person from being that of an independent contractor. *Central Railroad* v. *Grant*, 46 *Ga.* 418. Nor would the fact that he was to make the labor pay-roll advances, and was to be repaid out of the compensation which would become due the second party, operate to fix the status of the second party as that of a servant, it appearing that all the amounts thus advanced were to be fully repaid.

3. Under the foregoing rulings, there was no relationship of master and servant existing between the claimant and the defendant, and under the ruling made in the *Corbett* case, supra, there could be no recovery under the claim as brought.

DECIDED DECEMBER 20, 1926.

Appeal; from Wilkinson superior court—Judge Park. April 12, 1926.

*Brock, Sparks & Russell,* for plaintiffs in error.

*Victor Davidson,* contra.

JENKINS, P. J. W. Henry Lee filed a claim for compensation

under the workmen's compensation act, for injuries alleged to have been sustained in line of duty as an employee of W. T. Butler. He was awarded compensation by a commissioner, and this finding was sustained by the full commission, and by the superior court on appeal. The only question raised by the record is whether the relationship of master and servant existed between Butler and Lee. It appears, from the evidence, that Butler had previously been operating his own mill in sawing his own timber, but, finding it necessary to give his attention to his farming operations, he contracted with Bridges to take over the machinery and equipment and convert the timber into lumber, at a price of $7.50 per thousand feet. In the record there is nothing to indicate how long the contract was to run, or how much timber was to be converted into lumber. It indisputably appears from the record that Bridges was to hire and fix the compensation of, and had the exclusive right to discharge, all his labor; that he had complete authority and control as to the time, manner, and method of the work provided for by the contract. Butler was to make such advances to Bridges as might be necessary to meet Bridges' pay-roll, the advances to be repaid out of the compensation provided by the contract for Bridges. The evidence is clear that Butler simply advanced Bridges the money, and that the hands employed by Bridges were directly paid by him out of such advances made to him. Such advances were all charged to Bridges, and he was responsible for the full amount so advanced, whether he sawed sufficient lumber to cover the advances at the price agreed upon or not, Butler being responsible for and agreeing to pay only the contract price for the lumber sawed. The claimant was employed by Bridges, and was working at the sawmill operated and controlled by Bridges under his contract at the time of the injury. The findings of the commissioner on the facts of the case were as follows: "The facts in this case are that W. Henry Lee was employed at a sawmill owned by W. T. Butler and operated by a Mr. Bridges. While engaged in his work he received an injury to his hand, for which he asks compensation. The first part of February Mr. Butler, finding that he was more needed on the farm than at the sawmill, turned the mill over to Mr. Bridges and went to work on his farm. The terms of the contract were that Mr. Butler was to pay the hands for their services and pay Bridges seven dollars a thousand for the lumber he sawed. Dur-

ing the time of this contract the hands were paid by Mr. Butler, whether Bridges sawed a sufficient amount of lumber or not. Mr. Bridges had the right to discharge and employ his help at will. As a matter of fact, Mr. Bridges did employ Mr. Lee. Mr. Butler had protected his risk and thought it was to run for one year, the term of the contract. No request for payment of premium has been made to him, and the policy has not been cancelled. We find that the mill in question was the property of Butler brothers; that being unable to superintend the mill and attend the farm, they had put Mr. Bridges in charge. All of the product of the mill was turned over to Mr. Butler, and the manner of paying Bridges was by the piece, but Mr. Butler continued to pay the help, although he gave Bridges the right to handle the men as he saw fit. We do not believe that the claim that Bridges was an independent contractor has been sustained in this case, and that W. T. Butler is liable for this injury."

On appeal to the superior court, the judge rendered the following judgment: "The within case of W. T. Butler and Zurich General Accident & Liability Insurance Company against W. Henry Lee, in Wilkinson superior court, was argued and submitted to me by counsel in said case, on April 8, 1926, during the April term, 1926, of said court, and by consent of said counsel I held up my decision until this date. The industrial commission of Georgia decided that W. Henry Lee, under the law and facts of said case, was entitled to compensation for the injury sustained by him. The said appeal was then made to said superior court as provided by law. The attorneys for the appellants in the argument of said case stated that the only question at issue was whether or not Bridges, who was operating the sawmill at the time Lee was injured, was an independent contractor or a subcontractor, under the law and evidence in said case. If Bridges was an independent contractor, the award of the industrial commission ought to be set aside. If Bridges was a subcontractor, or a servant of Butler, then the award ought to be sustained.

"The evidence as set forth in the record shows that Butler owned the sawmill and the timber, and was under an agreement to operate the sawmill and furnish the timber. Bridges has no interest in the sawmill or timber, and, as Butler desired to look after his farming business, employed Bridges to operate the sawmill and

saw the trees into lumber, Butler stating in his evidence that he needed an assistant. Bridges was to receive for his labor in doing the work for Butler $7.50 per thousand feet for all lumber he sawed and stacked. Out of this amount he was to refund to Butler all amounts that Butler paid to the hands engaged in doing the work for Bridges. It will be seen from the testimony of Butler as set forth in the record, that Butler paid the laborers regardless whether Bridges sawed the lumber or not, and even if Bridges did not saw the amount of the lumber, Butler sent the hands the money. However, Bridges was to pay the hands out of the lumber that was sawed. See page 8 of the evidence reported in the record. If Butler had owned the sawmill outfit and had contracted with the laborers, and Butler was not under any obligation to see that they received their money, then Bridges would have been an independent contractor. In the case of Richmond &c. Const. Co. *v.* Richmond &c. R. Co., 68 Fed. 105 (34 L. R. A. 265), it is held that subcontractor, within the meaning of the Kentucky lien act, is one who contracts under and with the principal contractor. Therefore, in sawing the lumber that Butler was under contract to do, he was the principal contractor and Bridges was his subcontractor or employee or servant. The word servant, strictly speaking, is a person who by contract or by operation of law is for a limited time employed by another to render personal services to the employer. See Grubbs-Wiley Grocery Co., 96 Fed. 183. If all public officers in law are servants, then, under the facts of this case, Bridges was the servant of Butler to do certain work for the said Butler in assisting him to fulfill his contract in operating Butler's sawmill that Butler could carry out his contract. Therefore, it is ordered that the award of the industrial commission be sustained, and a new trial is refused."

*Judgment reversed. Stephens and Bell, JJ., concur.*