### 23148.   BENTLEY *v.* JONES.

Decided February 24, 1934.

*Hammond & Kennedy,* for plaintiff in error.
*Hardwick & Peebles,* contra.

MacIntyre, J.   Mrs. E. M. Jones instituted proceedings under the workmen's compensation act against Robert Bentley, for the death of her husband, E. M. Jones, while in the employ of the defendant.   The Department of Industrial Relations awarded her compensation, and upon this award the defendant appealed to the superior court of Richmond county, Georgia,—the county in which the accident is alleged to have occurred.   The judge of the superior

court entered an order denying and overruling the appeal and affirming the award. The defendant thereupon sued out a bill of exceptions to this court, complaining of this ruling.

The sole question to be decided as appears from the findings of the department and the argument of counsel in this court, is whether the relation of master and servant existed between the deceased and the defendant. A resume of the evidence will show the following uncontradicted state of facts and the legal inferences based thereon: Robert Bentley owned and operated a sawmill in Richmond county. During the summer of the year 1931 business was inactive in the lumber trade, and Bentley operated his mill only on a small scale. On the 12th of November, 1931, Bentley succeeded in selling to the Love Lumber Company 300,000 feet of manufactured gum and tupelo lumber. It appears that shortly after this date Bentley contracted with Jones, the deceased, for Jones to saw trees and cut them in certain lengths and that he was to be paid 60 cents per thousand (feet?) for such work. Bentley, after making the above contract with Love Lumber Company and with Jones, began operating his mill and had as one of his employees, as sawyer, one Phillips. After operating the mill for some two weeks in this manner, Phillips, on deciding that he could make more money by taking over the mill and operating the same himself, contracted with Bentley that he, Bentley, would turn the mill and equipment over to him, and he would manufacture the lumber at $5 per thousand feet, according to specifications recited in the contract between Bentley and Love Lumber Company. E. M. Jones thereafter agreed to and accepted the change in operations and agreed to continue his contract originally made with Bentley, under Phillips. No evidence appears in the record of any instances of control or authority assumed by Bentley over the operations of the mill, and it is undisputed that he exercised none. C. C. Morgan, another claimant, appears to have been hired and paid by Phillips, and on the morning of the injury was sent to the woods to help Jones cut trees. While he was so employed with Jones, Jones paid him and assumed control over him. It appears that a tree was cut down by the two which lodged in another tree, and, in attempting to trip it, a limb was knocked off which hit the deceased in the head and Morgan on the shoulder. Jones died four days thereafter. It further appears that Phillips hired, controlled, and paid the employees of the mill;

that Bentley sometimes paid the payroll but it was charged up to Phillips; that the sawmill and all the appliances and the property upon which it was located were the property of Bentley; that Bentley pointed out the tract of land where the lumber was to come from and instructed Phillips what dimensions were desired to complete the contract.

The view that we have taken of the case makes the determination of the question of the relationship existing between Bentley and Phillips the controlling consideration. If Phillips be an independent contractor, under the evidence in the case, a recovery could not be had, for Jones could only be considered as a servant or subcontractor of Phillips, and therefore would not sustain the relation of master and servant between himself and Bentley. On the other hand, if Phillips be the servant or agent of Bentley, the evidence would authorize a finding that Phillips had authority to hire Jones in behalf of Bentley, or that he ratified such employment, and therefore a recovery could be had in favor of the widow of Jones.

In order for one to recover compensation under the workmen's compensation act it must be shown that the relation of master and servant existed between him and the person from whom he claims compensation. Ga. L. 1920, p. 167. Where one "contracts with an individual exercising an independent employment, for him to do a work not in itself unlawful or attended with danger to others, such work to be done according to the contractor's own methods and not subject to the employer's control or orders except as to results to be obtained, the employer is not liable for the wrongful or negligent acts of such independent contractor or his servants." *Quinan* v. *Standard Fuel Co.*, 25 *Ga. App.* 47 (102 S. E. 543); Civil Code (1910), §§ 4414, 4415. In *U. S. Fidelity & Guaranty Co.* v. *Corbett*, 31 *Ga. App.* 7 (119 S. E. 921), this rule was held applicable under the provisions of the workmen's compensation act. See *Zurich General Accident & Liability Co.* v. *Lee*, 36 *Ga. App.* 248 (136 S. E. 173). We might well rest our decision upon the cases of *Irving* v. *Home Accident Insurance Co.*, 36 *Ga. App.* 551 (137 S. E. 105), and *Zurich General Accident & Liability Ins. Co.* v. *Lee*, supra, as controlling precedents and close our opinion. However, we desire to set out a little more in detail the controlling reasons for our conclusion. The books teem with discussion of the difference between independent contractors and servants. We realize that

we have pursued only a fragmentary part of them. Many definitions and tests have been announced by learned jurists and text-writers in determining the character of an independent contractor. As a whole, these definitions and tests agree in their main characteristics. The great diversity of opinion has arisen in their application to particular situations. In the words "independent contractor" the word "independent" has caused somewhat of a diversity in juridic definitions. The courts of our State have uniformly treated the *absence of any right,* on the part of the employer, to control the manner and means in which the stipulated work is to be done as the sole indicium of the independence of the contract. "Under the Georgia statute and decisions, the test to be applied in determining whether the relationship of the parties under the contract for the performance of labor is that of employer and servant, or that of employer and independent contractor, lies in whether the contract gives, or the employer assumes, the right to control the time, manner and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract." *Yearwood* v. *Peabody,* 45 *Ga. App.* 451 (164 S. E. 901). This quotation effectively gives the rule laid down by our courts to be used in determining the question here involved. The definition, adopted by many text-writers and courts, which ascribe a decisive significance to the lack of control on the part of the employer as to the means, manner, or time of the work, seems itself to be subject to criticism as not being all-comprehensive, for in a great many adjudicated cases the courts, in construing contracts which include provisions controlling these elements, still hold them to be independent contractors. This is well illustrated by one of our own cases. See *Louisville & Nashville R. Co.* v. *Hughes,* 134 *Ga.* 75 (67 S. E. 542). We adopt the view of the learned commentator in the highly valued A. L. R. text, that possibly a better statement of such rule would be: "An independent contractor is a person employed to perform work on the terms that he is to be free from the control of the employer as respects the manner in which the details of the work are to be executed." This, however, in no way contradicts, but on the other hand still retains, the definition already laid down. The controlling question always in cases of this kind is not whether the employer actually did assume control of the manner of doing the work but whether he had the *right* to do so under the contract.

Of course, as will be seen later, the circumstances surrounding the doing of the work and the fact that he did assume such control can be considered in finally determining this question. To make a proper construction of the contract, it is well to look to the circumstances surrounding the performance of the work. There is no dispute in the evidence that there was a contract between Phillips and Bentley for the operation of the mill and that he was to receive $5 per thousand feet, acceptable under the contract. The contract in this case, which created the relation, was oral. This adds to the difficulties attendant upon a decision of the question here involved. Phillips testified that he took over the entire control of the operation of the mill; he supervised, controlled, and directed the employees of the mill; he hired and discharged the laborers; he was responsible for their pay; that Bentley neither exercised nor retained the right of any authority of how he should perform the work nor did he have any right or assume any right of authority over the employees of the mill. These statements are all corroborated by the testimony of Bentley and we find no evidence in the record substantially contradicting these facts. The fact that a contractor employs, controls, and assumes entire charge over his workmen and that the employer neither has nor exercises any control, has, by many courts, including our own, been held practically decisive of the question of the independence of the contract (*United States Fidelity & Guaranty Co.* v. *Corbett,* supra; *Talmadge* v. *Tift,* 25 *Ga. App.* 639, 104 S. E. 91; Chicago v. Joney, 60 Ill. 382; Employer's Indemnity Co. v. Kelly Coal Co., 156 Ky. 74, 160 S. W. 914, 49 L. R. A. (N. S.) 850; Van Simaeys v. George R. Cook Co., 201 Mich. 540, 167 N. W. 925; Harmon v. Ferguson Contracting Co., 159 N. C. 22, 74 S. E. 632; Kelleher v. Schmitt &c. Mfg. Co., 122 Iowa, 635, 98 N. W. 482; Miller v. Merritt, 211 Pa. 127, 60 Atl. 508); and we think, under the facts of this case, taking into consideration the nature of the contract itself, that such fact is a decisive element here in going to substantiate the fact that Phillips was an independent contractor, especially where there is no other sufficient evidence showing any control or any evidence from which an inference of control on the part of Bentley over Phillips as to the means, manner and time of doing the details of the work. This fact, however, should not in all cases of this character be of such value, for where the contract or the surrounding circumstances

clearly show that the employer reserved the right to control not only the results but the means and methods of doing the details of the work, this fact, under the test as applied by our courts, would be of no value. In other words, where there is testimony uncontradicted that the employer did or did not assume and under the oral contract either did have or did not have the right to any control over the manner of doing the details of the work to be performed, such testimony prevails against any conflicting evidence that may be introduced. All those facts and legal inferences arising therefrom, where the right of control or assumption of control is not obvious, which go to show a person to be either an independent contractor or a servant, become, when the above is shown, of no value.

There is a lack of evidence in the present record showing that the employer *actually* exercised control over the manner and means of doing the details of the work while it was in progress, which of itself is an omission that corroborates the testimony that Bentley retained no right to exercise such control. See, in this connection, Houghton *v.* Loma Prieta Lumber Co., 152 Cal. 574 (93 Pac. 377); Benedict *v.* Martin, 36 Barb. (N. Y.) 288. It is further well settled in practically all courts that the right of the employer to exercise a certain control over the work, where the control reserved does not apply to the manner of doing the details of the work, and does not thereby take the work out of the hands of the contractor, but goes merely to a general supervision to insure that the ends prescribed by the contract shall be substantially met, does not destroy the independence of the relation. Cases bearing directly on this subject are: *Poss Lumber Co.* v. *Haynie,* 37 *Ga. App.* 60 (139 S. E. 127); *Malin* v. *Augusta,* 29 *Ga. App.* 393 (115 S. E. 504); *Quinan* v. *Standard Fuel Supply Co.,* supra; *Lee* v. *Atlanta, Birmingham & Atlantic R. Co.,* 9 *Ga. App.* 752 (72 S. E. 165); *Lampton* v. *Cedartown Co.,* 6 *Ga. App.* 147 (64 S. E. 495); *United Painting & Decorating Co.* v. *Dunn,* 137 *Ga.* 307 (73 S. E. 492); *Louisville & Nashville R. Co.* v. *Hughes,* supra; *Ridgeway* v. *Downing Co.,* 109 *Ga.* 591 (34 S. E. 1028). Foreign authorities: St. Louis &c. R. Co. *v.* Madden, 77 Kas. 80 (93 Pac. 586, 17 L. R. A. (N. S.) 788); Uppington *v.* New York, 165 N. Y. 222 (59 N. E. 91, 53 L. R. A. 550); Edmundson *v.* Pittsburg &c. R. Co., 111 Pa. 316 (2 Atl. 404); Murphy *v.* Ottawa, 13 Ont. Rep. 334; Lutenbacher *v.* Mitchell Borne Construction Co., 136 La. 805 (67 So. 888); Buck-

ingham v. Commary Peterson Co., 39 Cal. App. 154; Pres-O-Lite Co. v. Skeel, 182 Ind. 593 (106 N. E. 365, Ann. Cas. 1917A, 474). See the very comprehensive note in 20 A. L. R. 684.

There is in all agreements to do specific work for another the necessary and implied power in the person for whom the work is to be done to supervise the work, to see that the desired results are attained, and to reject all products that do not come up to specifications, but this control would not change the relation of employer and independent contractor into that of master and servant. That Bentley might have exercised some control over the entire work, such as supervision, suggestions, and directions to insure that the desired result is attained would not in the slightest degree change his relation with Phillips. The facts relied on by the defendant in error to show that the employer reserved or assumed control over the manner, means, and time of doing of the details of the work, in order to sustain the award of the commission, are that Bentley owned both the sawmill and its equipment and the lumber; that he advanced the payroll; that he pointed out the boundary line of his timber; showed where the timber was and what kind he wanted cut, and also gave him instructions as to the dimensions the lumber was to be sawed. The pointing out by Bentley of the tract of land from which the lumber was to be cut, and his directions as to the dimensions desired and the kind of lumber desired, were facts and directions necessary to the formation of the contract itself, and in this case are not in any way antagonistic to the independence of Phillips. See In Re Stailla, 235 Fed. 58; See v. Leidecker, 152 Ky. 724 (154 S. W. 10); Scales v. First State Bank, 88 Or. 490 (172 Pac. 409), where trees were marked on a tract of land indicating that they were not to be cut.

It is true that in many cases the fact that the employer paid the employees of the contractor has been held to be a fact to be considered in determining the character of the relation existing between the parties, but, on the other hand, where other and more important facts go to show that no control was reserved or assumed, these facts are overwhelmingly overcome and are of no evidentiary value. Moreover, in this case it was only shown that Bentley advanced the money for the payroll, and not that he actually paid it as his own responsibility. He could have well done this to insure that the work would not be delayed, and this would not show any assump-

tion of control by him. The same may well be said of the fact that the sawmill and all the implements were the property of the employee. We have not been able to find a case that makes this fact decisive; and in the face of the other facts as shown in the case, it would not here be decisive. See, in this connection, *Lampton* v. *Cedartown,* supra; *Lee* v. *Allanta, Birmingham & Atlantic R. Co.,* supra; *Tallent* v. *Hunter, 32 Ga. App.* 656 (124 S. E. 361). This case is unlike those cases where the person under the contract is a mere laborer, and work to be performed requires only muscle and strength, which, as this court, in *Swift* v. *Alston, 48 Ga. App.* (post), points out, was practically decisive in the absence of other evidence that the employer did not relinquish control over the employee and the manner of doing the details of the work, for although Phillips did do part of the labor connected with the mill, some skill on his part was necessarily involved in knowing how to run the mill and how to cut the timber according to certain specifications. It was the exercising of an occupation which stands above and aside from mere common labor. We are of the opinion that the evidence, as a matter of law, showed that Phillips was an independent contractor and not a servant or agent of Bentley, and therefore that the award of the commission was wholly without evidence to support it and was therefore contrary to law.

*Judgment reversed. Broyles, C. J., and Guerry, J., concur.*