23214. SWIFT & COMPANY *v.* ALSTON.

DECIDED FEBRUARY 27, 1934.

*Smith, Smith & Bloodworth,* for plaintiffs in error.

*Spradlin & Whiddon, F. L. Breen,* contra.

MACINTYRE, J. There is presented by the record in this case only one major question for decision. The widow of Alston made application to the department of industrial relations for compensation under the workmen's compensation act, for his death, alleging that at the time of the injury, which resulted in death, he was in the employ of Swift & Company. This position was opposed by Swift & Company, they contending that he was not in any way employed by them, but was an employee of one Oliver, who was an independent contractor. The record presents substantially the following facts: Swift & Company purchased coal necessary for the running of its factory, in carload lots. The cars were delivered on sidetracks to its plant at different times, according to the demands of its business and as orders were placed. Oliver was employed through oral agreement by M. C. Dorch, superintendent of the refinery of defendant, to unload the cars as they arrived, his compensation being computed on the basis of each ton unloaded. He was directed where the car was to be stationed and where the coal was to be placed when unloaded. The actual terms of the agreement are meager, the above being the substance of its purport. There was testimony by the officers of the defendant company that Oliver was in no way directed or controlled as to the means, manner, or time of doing his work. It does not appear that he was required to work at any specific hours, but only upon the arrival of a car he would come and unload it. Alston, the deceased, was employed, paid, and controlled by Oliver, to help him unload the cars. It appears, from the evidence, that the hiring by Oliver of others to help him unload the cars was not objected to by the defendant company, but,

on the other hand, such practice was acquiesced in; they at the same time exercising no authority or control over Alston. This we deem sufficient to give a general view of the transaction under investigation, as in the view we have taken of the case, it is not necessary to go into the evidence in detail.

After a careful consideration of the facts presented, they indicate to our minds that Oliver, from the nature of his work and the surrounding circumstances, was a servant and not an independent contractor of the defendant company. Our courts have generally laid down the test, in determining whether one is a servant or independent contractor, to be the *lack of the right* in the employer, to control the manner, means, and time of doing of the work, as distinguished from the right merely to control the *result* to be obtained by the work. See *Yearwood* v. *Peabody, 45 Ga. App.* 451 (164 S. E. 901), and cit. See also *Bentley* v. *Jones, 48 Ga. App.* 587 (173 S. E. 737). There is nothing in the present record showing any provisions of the contract retaining in the defendant company any right to control the manner, means, and time of doing the details of the work; and there is testimony of officers of the company that no such control was exercised. The question to be decided in all cases of this character is: Had the defendant the *right,* under the agreement, to control the employee in the means, manner, and time of doing the details of the work, as distinguished from the mere right to control the result to be obtained by the work, or did the defendant assume such control over the means, manner, and time of doing the work as to change the relation from employer and independent contractor to that of master and servant? The defendant bases its contention that Oliver was an independent contractor on the facts, (1) that he was paid by the ton for his work; (2) that he was at liberty to hire and did hire others, to aid in the performance of his work, over which he had control, and (3) the evidence of the various officers of the defendant company that they did not give Oliver any direction, or exercise any control over him, as to how he unloaded the coal from the cars. We are, however, of the opinion that none of these facts, either separately or collectively, under the circumstances of the nature of his work, are antagonistic to the finding of the Department of Industrial Relations.

It is true that courts have in some cases treated the mode of payment as a circumstance to be considered in determining the char-

acter of the relation, but in so far as our diligence has found, that is by no means decisive of this question, nor is it in any way inconsistent with the idea of that relation being one of master and servant. Further, we do not think the fact that Oliver hired other employees in the performance of his work is decisive in showing the relation to be that of an employer and independent contractor, rather than that of master and servant. See, in this connection, *Bentley* v. *Jones, supra.* The testimony of the officers of the defendant company that they at no time directed, controlled, or assumed any control over Oliver in the means, manner, and time of doing his work is itself only circumstantial evidence to be considered as to whether the company had the right to so control the work, for the test is *not* whether the defendant *did in fact control* and direct plaintiff in his work, but is whether it *had* the *right,* under the employment, taking into consideration the circumstances and situation of the parties, and the work, to so control and direct him in his work.

We are of the opinion that the evidence amply authorized the finding that Oliver was subject to the control of Swift & Company as to the manner, means, and time of doing the details of the work, had it seen fit to exercise such control over his movements, and that therefore the deceased was also subject to their control and direction. The Department of Industrial Relations was further authorized to find that Swift & Company acquiesced in and ratified the employment of Alston by Oliver, and therefore to award compensation to his widow. It is first to be taken into account, with reference to the employment of Oliver, that he had no separate contract for each car of coal unloaded, nor did his contract run for any specified time, but he had been employed generally to unload the cars as they arrived, for six years prior to the injury to the deceased. "Where one is employed generally to perform certain services for another, and there is no specific contract to do a certain piece of work according to specifications for a stipulated sum, it is inferable that the employer has retained the right to control the manner, method, and means of the performance of the contract, and that the employee is not an independent contractor." *Mitchem* v. *Shearman Concrete Pipe Co.,* 45 *Ga. App.* 809 (165 S. E. 889). Oliver was a mere laborer; his work was simple; he was exercising no independent business; his work required no special skill. The

inference with respect to the quality of the contract becomes virtually a prima facie presumption, in the absence of affirmative proof that Swift & Company was not entitled to control the details of the work, that the employee is a servant and not an independent contractor. In Chicago &c. Pacific R. Co. v. Bennett, 36 Okla. 358 (128 Pac. 705), the court held, in a case strikingly similar to the one at bar, that a coal heaver, who was employed by the defendant railroad company to unload cars of coal into tenders of engines, only at such times when such work was necessary, and was paid by the ton and sometimes "hired a neighbor, paying him a pig to help him shovel coal," was, because of the nature of his employment and the circumstances surrounding the doing of the work, a servant and not an independent contractor. The questions asked by the learned judge in that case might well be paraphrased and propounded here: Would an officer or manager of defendant, who might have seen Oliver or those helping him heaving coal carelessly or wastefully, and placing it in the bins improperly, have had the right to require him to use a better method? If such manager saw him unloading one car into one place and desired that another car be unloaded first in another place, would he not have at once commanded and enforced obedience to his wishes, thus changing Oliver's plan and method of work? We think so. Again paraphrasing that decision: It is inconceivable to this court that a large corporation of the character of the defendant would hire an unskilled man to perform one of the simplest tasks of hard manual labor, requiring scarcely more than muscle in its performance, yet one that must be performed in the running of its industry, and absolutely relinquish all right of control and direction.

It is said along this line by Moll on Independent Contractors, at page 76: "The ground upon which some decisions may have been said to have proceeded was that, in view of the humble industrial status of the persons employed and the simple character of the work to be done, the only admissible inference was that the employers intended to retain the right to give direction in regard to details of the work." In Kinofsky v. Industrial Commission, 290 Ill. 521, one of the facts emphasized by the court was that the work (stripping of engines by men engaged in the "junk" business) was simple, and little direction and control was required in it. See also Bristol & G. Co. v. Industrial Commission, 292 Ill. 16, where the fact that

the work of a man employed as a teamster was simple, was one of the grounds upon which he was held to be an employee. "Undoubtedly, one can not shield himself under the doctrine of independent contractor by simply employing another person, and giving him a general authority to procure others to assist in work which requires no care, or skill, or experience, but which is merely such as might be done by any person with sufficient physical strength." Kueckle v. Ryder, 54 App. Div. 252 (66 N. Y. S. 522). See also note in 20 A. L. R. 684. We perceive nothing in the nature of the employment, or in the contract, to indicate that Oliver was not subject to the control and direction of the defendant company, had it seen fit to exercise such control. To constitute Oliver an independent contractor it must at least appear that the work to be performed was committed exclusively to his discretion. The nature of the work done by Oliver no less than the agreement or the circumstances surrounding the work, failed to show a foundation upon which to hold that he was an independent contractor.

From what has been said above, we think that the award of the Department of Industrial Relations was amply supported by the evidence and should be affirmed. See, in support of what has been said herein, the following cases: *Cooper* v. *Dixie Construction Co.*, 45 *Ga. App.* 420 (165 S. E. 152); *Massee & Felton Lumber Co.* v. *Macon Cooperage Co.*, 44 *Ga. App.* 590 (62 S. E. 396); *Buffalo Forge Co.* v. *Southern Ry. Co.*, 43 *Ga. App.* 445 (159 S. E. 301); *Taylor* v. *Lumbermen's Mutual Casualty Co.*, 43 *Ga. App.* 292 (158 S. E. 623); *Home Accident Insurance Co.* v. *Daniels*, 42 *Ga. App.* 648 (157 S. E. 245); *Love Lumber Co.* v. *Thigpen*, 42 *Ga. App.* 83 (155 S. E. 77); *Mount* v. *Southern Ry. Co.*, 42 *Ga. App.* 546 (156 S. E. 701); *Davis* v. *Starrett Bros. Inc.*, 39 *Ga. App.* 422 (147 S. E. 530); *United States Fidelity & Guaranty Co.* v. *Stapleton*, 37 *Ga. App.* 707 (141 S. E. 506); *Employers Liability Assur. Cor.* v. *Treadwell*, 37 *Ga. App.* 759 (142 S. E. 182); *Maryland Casualty Co.* v. *Radney*, 37 *Ga. App.* 286 (139 S. E. 832); *Poss Lumber Co.* v. *Haynie*, 37 *Ga. App.* 60 (139 S. E. 127); *Zurich Gen. Acc. &c. Ins. Co.* v. *Lee*, 36 *Ga. App.* 248 (136 S. E. 173); *United States Fidelity & Guaranty Co.* v. *Corbett*, 31 *Ga. App.* 7 (119 S. E. 921); *Malin* v. *Augusta*, 29 *Ga. App.* 393 (115 S. E. 504); *McCook* v. *Brown*, 28 *Ga. App.* 525 (112 S. E. 151); *Quinan* v. *Standard Fuel*

*Supply Co.*, 25 *Ga. App.* 47 (102 S. E. 543) ; *Lampton* v. *Cedartown Co.*, 6 *Ga. App.* 147 (64 S. E. 495):

*Judgment affirmed.* *Broyles, C. J., and Guerry, J., concur.*