32476. STUDDARD *et al. v.* PHOENIX INDEMNITY CO. *et al.*

DECIDED JUNE 1, 1949. REHEARING DENIED JUNE 22, 1949.

470

*Dunaway, Riley & Howard,* for plaintiffs.

*Smith, Partridge, Field, Doremus & Ringel,* for defendants.

FELTON, J. There are two questions presented for adjudication: (1) Was the deceased an employee of the defendant within the meaning of the Workmen's Compensation Act at the time he met his death? (2) Did deceased's death occur as the result of an injury arising out of and in the course of his employment?

The defendant contends that the board was authorized to disregard the testimony of the witnesses, Potts and Hornsby, and accept their written statements as true because of the contradiction by the witnesses on the hearing as to the nature of the flight, whether it was for training purposes in addition to being a charter flight, as they testified on the hearing, or strictly a charter trip having no connection with the defendant's training program, as was shown by their written statements. Conceding for the sake of argument that the board was authorized to disregard the testimony of the two witnesses and believe their sworn statements, we, still, are of the opinion that the remaining undisputed evidence demanded a finding for compensation. Defendant argues that from the evidence the board was authorized to find that the deceased occupied a status of a volunteer or special employee of the student Banks on this trip and that at the time of his death he was not in the employ of the defendant, and, therefore, the injury could not have arisen out of and in the course of his employment. The defendant bases this argument on the evidence adduced from the sworn statements of the two witnesses, Potts and Hornsby, to the effect: (1) that this was a charter trip and had no connection with flight training, (2) that the deceased was not directed by his employer to make this trip, (3) that the defendant's agent expressly informed the deceased he would receive no compensation from the defendant for making this trip.

As to the first contention, we are of the opinion, under the facts of this case, that it is immaterial whether or not this charter flight was made in connection with the training program. Hornsby's sworn statement was to the effect: "The charter trips are part of the regular business of Southern Airways Incorporated,

and it is always a part of the charter contract to have one of our instructors in each Bonanza [plane] that goes out on a chartered flight." Therefore, one of the deceased's regular duties in addition to flight instruction was to make charter trips, and the fact that this trip had no connection with flight training would not remove the deceased from the status of an employee engaged in his regular duties to one of volunteer or special employee of the student Banks.

Defendant's second contention that defendant's agents did not direct the deceased to make the trip, and that, therefore, it could be inferred that the deceased acted as a volunteer or special employee of Banks and not as an employee of the defendant, likewise, is untenable. One of the necessary incidents to the relationship of employer-employee is the right of control or direction over the employee. If the right of control be conclusively shown to exist, then evidence to show the actual exercise of control or the absence of it, becomes wholly immaterial. It is the right of control, and not the fact of control, which is decisive. *Bentley* v. *Jones*, 48 *Ga. App.* 587, (173 S. E. 2d, 737) ; Pennsylvania R. Co. *v.* Barlion, 172 Fed. 2d, 710; Liberty Mutual Insurance Co. *v.* Boggs (Tex. Civ. App.), 66 S. W. 2d, 787. The fact that the defendant's agents did not expressly direct the deceased to make the flight does not raise an inference that the deceased volunteered to go solely for his own personal benefit or as special employee of Banks, especially in view of the fact that the undisputed evidence showed that at the time of the accident a contract of employment existed between the deceased and defendant; that the deceased was subject to call 24 hours a day; that this charter flight was a regular part of defendant's business and the policy of the defendant company required an instructor to accompany this type of plane on a charter flight. We are of the opinion that the evidence conclusively showed that the defendant had the *right* to direct the deceased to make this flight and whether it did in fact is not controlling. Furthermore, the undisputed testimony of the unimpeached witness, I. Q. Ball, present Vice-President and General Manager of defendant was: "Now, to go or not to go on a flight is not ever mandatory; we never demand that a pilot go on a flight; he can turn down any flight he so desires, but obviously if we have a pilot that refuses to go on a large number

of flights or a large percent of flights when asked to go on, we simply get some other pilot to work for us." This testimony further strengthens the existence of the right of control and direction by defendant over the deceased. Defendant also contends that the testimony of the chief pilot Hornsby to the effect that he had no control over the plane after it left the airport is sufficient to show that the element of control which is essential to employer-employee relationship is lacking. This contention is likewise without merit. This testimony was a conclusion, not based on the facts disclosed by the record. This testimony of Hornsby was explained by his subsequent testimony: "After they left the field the only way I could stop it would be by notifying C A radio on to have them return but if they were sitting up there and didn't have it turned on that particular station at the time, there is no way I could have them return." This testimony discloses the physical impossibility under the circumstances of enforcing control, but in no way does it negative the existence of the *right* of control.

Defendant's third contention that the deceased was expressly informed that he would receive no compensation from the defendant for this trip did not authorize a finding that the deceased was a volunteer or special employee of Banks. The evidence showed that the deceased had other duties in addition to flight instruction, such as storage of planes and ground instruction, for which he received no direct remuneration; that charter flights were a regular part of defendant's business; that the duties of defendant's instructors, in addition to flight instruction, consisted of accompanying such flights; that if the deceased had not made the flight some other pilot of defendant would have had to go; that the defendant was to receive $15 an hour for the rental of this plane. The evidence demanded a finding that the deceased was not a volunteer or special employee of Banks; that he made this flight in the interest of the defendant's business. Even if the deceased had entered into an agreement with Banks whereby Banks was to pay him for this trip, this would not sever the employer-employee relationship between the deceased and defendant. "Notwithstanding the mere fact that the mission may have two objectives, service as intended by the contract of employment, and also some personal objective of the employee, an in-

jury sustained by an employee under such circumstances is an injury arising out of and in the course of the employment and is compensable." *Travelers Insurance Co.* v. *Bailey*, 76 *Ga. App.* 698 (47 S. E. 2d, 103). See also *Hartford Accident & Indemnity Corp.* v. *Welker*, 75 *Ga. App.* 594 (44 S. E. 2d, 160).

We, therefore, conclude that the undisputed evidence demanded a finding that the deceased was an employee of the defendant at the time of his death; that at the time and place of the accident the deceased was in the performance of the defendant's business, namely, as an accompanying pilot on one of defendant's charter flights and that the injury was one peculiar to his employment as a charter pilot, and therefore, the accident arose out of and in the course of his employment.

The court erred in affirming the award denying compensation.

*Judgment reversed. Sutton, C. J., and Parker, J., concur.*