43003. AMERICAN MUTUAL LIABILITY INSURANCE COMPANY et al. v. ROZIER.

Argued September 7, 1967—Decided January 23, 1968—
Rehearing denied February 5, 1968.

H. P. Arnall, W. W. Larsen, Jr., for appellants.

Paul J. Jones, Jr., for appellee.

WHITMAN, Judge. 1. The facts found by the deputy director to exist at the time of Rozier's death can be summarized as follows: (1) Rozier was killed when a tree he was cutting fell on him; (2) the tree was being cut for N. L. Rowe; (3) Rowe, Rozier's employer, had only four employees and was not subject to the Workmen's Compensation Act; (4) Rowe sold pulpwood to W. R. Cullens' Woodyard, and also at times sold pulpwood to other woodyards, and in addition to selling pulpwood he also cut timber to be used for lumber which he sold to the Georgia Plywood Corp. and other lumber mills; and (5) when Rozier was killed he was not an employee of Cullens nor was he cutting pulpwood to be hauled to Cullens' Woodyard, rather he was cutting down trees to be hauled for lumber.

With regard to the activity which Rozier was about at the time of his death, this court has reviewed the entire record and finds that the only evidence in support of the deputy director's finding that Rozier was not cutting pulpwood to be hauled to Cullens' Woodyard is the testimony of John F. Britt, yard foreman at the woodyard, that he had a conversation with Rozier

the day before he was killed, and said to him: "I told him not to cut any more hardwood, that we couldn't use it at this time. We didn't have a quota for it, and that's all I told him."

The significance of this message, as shown by the evidence, was simply that the yard was being closed to the receipt of hardwood pulpwood until the yard again received orders for wood from the various mills to which it shipped. Such yard closings were not expected to be for extended periods of time. For example, in the present case, pursuant to the yard closing message which was delivered to Rozier and all other vendors of the yard, the yard was again opened for wood after only four days. Britt testified that hardwood pulpwood would keep approximately 90 to 120 days. While the testimony of Britt would support a finding that any pulpwood Rozier cut for Rowe would not be purchased by the woodyard until it was again opened, it does not support the deputy director's finding that Rozier was not cutting pulpwood to be hauled to Cullens' Woodyard when it was again opened.

In contrast to the testimony of Britt was the testimony of Rozier's employer, Rowe, also a defendant, that the tree which struck Rozier causing his death was a sweet gum tree which he was felling in order to "top" it for the pulpwood in it, that the lower parts of such trees were made into logs by his logging crew and sold to a plywood manufacturer or to lumber mills, that Rozier's duty was to cut the portion of the tree unsuitable for logs, i.e., the top, into pieces suitable for pulpwood. Rowe further testified directly and unequivocally that when Rozier was killed he was cutting the tops for pulpwood to be delivered to Cullens' Woodyard, that he paid Rozier only for cutting pulpwood and that Rozier was not a "logger."

In view of the evidence adduced at the hearing, the trial court did not err in holding that the deputy director's finding, i.e., that Rozier was not cutting pulpwood to be hauled to Cullens' Woodyard at the time of his death, was "not supported by sufficient competent evidence and was contrary to the direct, positive, unimpeached and uncontradicted testimony that the deceased was cutting pulpwood at the time of his death to be delivered to W. R. Cullens' Woodyard."

2. Nevertheless, of what consequence is the fact that Rozier was shown by the evidence to be cutting pulpwood for his employer, Rowe, to be delivered to Cullens' Woodyard? Defendant Rowe had but four employees, including Rozier, in which case the Workmen's Compensation Act does not ordinarily apply. See *Allen v. Clein,* 99 Ga. App. 133 (3) (108 SE2d 291); *Code Ann.* § 114-107. The evidence also shows that the basic relationship between Rowe and Cullens' Woodyard was that of vendor and vendee respectively, in which case neither would ordinarily be liable under the Workmen's Compensation Act for injuries sustained by the employees of the other. See *U. S. Fidelity &c. Co. v. Corbett,* 31 Ga. App. 7 (119 SE 921); *Code* § 114-112.

But here there were additional facts to be considered. It appears from the testimony of Cullens and certain of his business records which were in evidence and from the testimony of Rowe, that with every cord of pulpwood the woodyard purchased from Rowe, Cullens deducted a certain sum before making payment with the representation by Cullens and a like understanding by Rowe that the sums deducted were for the purpose of providing workmen's compensation insurance for Rowe and his employees *whenever cutting pulpwood to be delivered to Cullens' Woodyard.* Cullens testified that the amount he collected per cord from Rowe and other vendors was fixed by the American Mutual Liability Insurance Company and that he remitted the sums so collected to American Mutual.

Any findings of fact and conclusions of law by the deputy director as to the effect of the foregoing evidence, e.g., whether Rowe and his employees were in fact covered by workmen's compensation insurance or, if not, whether Cullens by virtue of his representations may have been estopped to deny liability or, if so, whether Rozier was privy to such representations, were of course obviated by his finding that Rozier was not, at the time of his death, cutting pulpwood to be delivered to Cullens' Woodyard.

The trial court, having reference to *Code* § 114-607 which prohibits an insurer who has issued a policy of compensation insurance from making certain defenses, ordered the case "remanded to the deputy director for the purpose of hearing evidence and

making a finding of fact as to whether the defendant employer, N. L. Rowe, and his employees were covered by workmen's compensation insurance, and whether American Mutual Liability Insurance Company was the insurer." The trial court, having reversed the finding that Rozier was not cutting pulpwood to be delivered to Cullens' Woodyard, which action is affirmed by this court in Division 1 above, did not err in ordering the case remanded for the purpose stated in its order.

The judgment of the superior court is, therefore, affirmed with direction only that it be modified so as to remand the case to the *State Board* to afford the deputy director opportunity for compliance.

*Judgment affirmed with direction. Bell, P. J., and Pannell, J., concur.*