### 26593. LOKEY & SIMPSON *v.* HIGHTOWER.

DECIDED MARCH 18, 1938.

*T. Reuben Burnside,* for plaintiff in error.
*Randall Evans Jr.,* contra.

GUERRY, J. The Department of Industrial Relations awarded compensation to Willie Hightower, against Lokey & Simpson as employer. The defendant excepts to the judgment of the judge of the superior court on appeal, affirming the award made by the department. Counsel for both parties agree that the only question for decision is whether the evidence introduced authorized the finding that the claimant was an employee of the defendant. The defendant contends that the claimant was not an employee but an independent contractor, and that the evidence authorized no other finding. It appears from the evidence that Lokey & Simpson, a partnership composed of Leonard Lokey and E. M. Simpson, was engaged in the sawmill business. The claimant was employed by the defendant as a servant, but shortly before his injury he had a misunderstanding with Lokey and was discharged. Several days later, Simpson contracted with him to cut trees down on a certain tract of land, his compensation to be so much per thousand feet. Simpson, on behalf of the defendant, testified: "I made a trade with Willie Hightower to cut a certain tract of timber out on the Gun place at so much a thousand feet and he employ his own help. . . Willie made a contract with me and I can tell you the proposition I made. I said I would give him forty cents a thousand if he used certain tools we had, but I would give him

fifty cents a thousand and we have nothing to do with it and let him go ahead and cut the timber. He was to cut the timber into standard lengths for the roofing business, everybody knows what that is. The two standard lengths are 12 and 16 feet. . . We didn't specify the lengths, in this country where the roofing and box business prevail we don't go into that. . . The way he was working, he didn't go to work when our crowd went to work. He went to work anytime during the day he wanted to, and one day he was not out there at all. He hired another man to work in his place that day. We were only on that job about four days. Two men on a crosscut saw did the cutting, Willie and the man he hired. I knew nothing about the man he hired. Of course, he had to have a helper. There was no specified height above the ground for him to saw the timber in that kind of work. He couldn't cut it as high as you indicate. They were to cut it anywhere from 18 inches to two feet above the ground; or, if the tree was bad and leaning, it would necessitate him to cut it higher than that and we had no objections to that. If the tree was straight he was to cut it with the least possible waste unless it endangered the saw or the men. He was to use his own judgment about the height to cut the tree. He was supposed to know how to cut timber. He was a log cutter, and he knew about this kind of cutting and we didn't advise him about it one way or the other. . . We were in the sawmill business and wanted some timber cut and contracted with Willie Hightower to cut the body of timber and agreed to pay him 50 cents a thousand feet if he used his own tools. We didn't have anything to do with whom he employed. We didn't have anything at all to do with the hours he worked. We didn't supervise the work. He did not go to work with our hands, he went to work with his own men. He did not use the same hours our men used. He worked when he pleased and quit when he pleased. You see, it is customary with log cutters, they don't work as many hours anyway as the mill hands work. They will go in early in the morning and cut before we start up, and in the heat of the day they will leave and be gone for several hours." The claimant testified in part: "My business was to cut trees in the woods. I had a contract to do that. I didn't hire anybody to help. I had somebody helping me. I was to get so much a thousand for cutting the logs and didn't hire any-

body to help me. . . Aleck Taylor was helping me. Mr. Simpson paid him his part and paid me mine. He was cutting like I was. He got 20 cents a thousand and I got 20 cents a thousand. Mr. Simpson came out in the woods and showed us where to·cut, the trees he wanted us to cut, but he didn't show us how they were to be cut or anything like that, he wasn't overseeing us. We cut the trees as we wanted to cut them, he told us to cut in 10, 12, 16, and 22. We didn't furnish our own tools and did not rent them from Mr. Simpson; they was already his and he give them to me to cut with."

In *Durham Land Co.* v. *Kilgore*, 56 *Ga. App.* 785 (194 S. E. 49), it was said: "If the employer has or assumes the right under the contract to control and direct *how* the work shall be done, that is to say, if the employer has or assumes the right under the contract to control the manner in which the details of the work are to be executed, as distinguished from the mere right to superintend it so that the desired results are obtained, the relationship is that of master and servant. If, on the other hand, the employer has or assumes only the right under the contract to superintend the work to the end that the desired results so contracted for are obtained, and does not have or assume the right under the contract to control the manner in which it is done, which right is vested in the contractor, the relationship is that of employer and independent contractor. Thus it has been said that where a contract is entered into, providing for the execution of a specific kind or piece of work for a stated compensation, 'the test to be applied in determining whether the relationship of the parties under' the 'contract for the performance of labor is that of employer and servant, or that of employer and independent contractor, lies in whether the contract gives, or the employer assumes, the right to control the time, manner, and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract.' *Yearwood* v. *Peabody,* 45 *Ga. App.* 451 (2) (164 S. E. 901). See also *Bentley* v. *Jones,* 48 *Ga. App.* 487 (173 S. E. 737) and cit."

Settling all conflicts in the evidence in favor of the claimant, as the director has done, it would appear that the defendant employed the claimant, together with another, to fell trees on a certain tract of land, and to saw them into stated lengths; that his compensa-

tion was to be so much per thousand feet of the trees sawed; that the defendant pointed out the trees to be cut and furnished the tool with which the work was to be done, which was apparently nothing but a crosscut saw; that the claimant being an experienced log cutter, the height that the trees were to be cut from the ground was actually left very much in his discretion. While the contract is silent as to the rights of the parties to control the manner of doing the details of the work, and the evidence does not show that the defendant assumed control over claimant except as above set out, the preponderating inference under all the evidence, we think, is that the defendant had the right under the contract to exercise control over the manner of doing the details of the work, which, in a case of this character, amounts hardly to more than the manner of application of physical labor. What was said by this court in *Swift & Co.* v. *Alston*, 48 *Ga. App.* 649 (173 S. E. 741), seems in principle applicable to the facts of the present case. In discussing the position of the claimant in that case the court said: "Oliver was a mere laborer; his work was simple; he was exercising no independent business; his work required no special skill. The inference with respect to the quality of the contract becomes virtually a prima facie presumption, in the absence of affirmative proof that Swift & Company was not entitled to control the details of the work, that the employee is a servant and not an independent contractor." In the present case, about the only thing that we find was left to the discretion of the claimant was as to how high from the ground each tree should be cut. But it can hardly be conceived that since the nature of his employment was merely the application of physical labor, and that since the defendant furnished him his tool, and directed him as to what trees to cut, that the defendant would not have had the right, and that it was impliedly so understood between them, to direct him to cut a tree in a manner other than he would have cut the same if the defendant thought that his manner of cutting would amount to a waste. It is true that it further appears that the claimant did not and was not required to work on the same schedule of hours as other employees of the defendant, and that he was at liberty to work at irregular hours. On the other hand the inference is clearly warranted that he could be required to work sufficient time to keep the mill supplied with logs for the purpose of cutting them

into shingles. The mere fact that he did not have regular hours would not demand a finding, when taken in connection with the other facts of the case, that he was an independent contractor rather than a servant. From what we have said above it will be seen that we are of the opinion that the evidence amply authorized the finding of the director. See, in this connection, *Ocean Accident & Guarantee Corporation* v. *Hodges,* 34 *Ga. App.* 587 (130 S. E. 214) ; *Love Lumber Co.* v. *Thigpen,* 42 *Ga. App.* 83 (155 S. E. 77) ; *Home Accident Insurance Co.* v. *Daniels,* 42 *Ga. App.* 648 (157 S. E. 245).

*Judgment affirmed. MacIntyre, J., concurs. Broyles, C. J., dissents.*

BROYLES, C. J., dissenting. This is a "compensation" case in which compensation was awarded to Hightower, the claimant; and the award of the Department of Industrial Relations was affirmed by the judge of the superior court. It is agreed by counsel for both parties that the only question to be determined by this court is whether the claimant was a servant or employee of Lokey & Simpson, the plaintiff in error, or an independent contractor. As said by this court in *Home Accident Ins. Co.* v. *Daniels,* 42 *Ga. App.* 648 (2) (157 S. E. 245) : "Under the Georgia statute and decisions, the test to be applied in determining whether the relationship of the parties under a contract for the performance of labor is that of employer and servant, or that of employer and independent contractor, lies in whether the contract gives, or the employer assumes, *the right to control* the *time, manner, and method* of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract. *Zurich General Accident &c. Ins. Co.* v. *Lee,* 36 *Ga. App.* 248 (136 S. E. 173)." (Italics mine.) In the *Daniels* case, supra "it appeared that the claimant was engaged in cutting and hauling logs to a sawmill under a contract by which he was paid so much per thousand feet, and paid his own help, and where the claimant testified that the employer deducted a. certain percentage of his compensation for insurance; that the employer 'would show me what to cut, and pick out the pines and show me;' that the employer sent him orders 'how to cut logs;' and would 'show us in the woods where to go;' and where the evidence indicated that under the contract the employer furnished a portion of the equip-

ment used in the logging operation, and the claimant the remaining portion, the evidence authorized the industrial commission to find that the contract gave, or the employer assumed, the right to control the time and manner of executing the work, and that the relationship of employer and servant existed between them." In that case the fact that the employer *deducted a certain percentage of the claimant's compensation for insurance* strongly tended to show that the relationship of employer and servant existed between them. There is no such evidence in the instant case, or any other evidence, to authorize the Department of Industrial Relations to find that the contract gave, or the employer assumed, the right to control the *time and manner* of executing the work. The undisputed evidence showed that the claimant had *formerly* worked as an *employee* of Lokey & Simpson, but that *such employment* had *terminated* and that, at the time of his injury, he was working for Lokey & Simpson under a contract to cut a certain tract of timber, at so much a thousand feet, into standard lengths for the roofing business; that he had a helper; that Simpson showed him and his helper where to cut and the trees he wanted cut, "but he [Simpson] didn't show us how they were to be cut or anything like that, he wasn't overseeing us. We cut the trees as we wanted to cut them, he told us to cut in 10, 12, 16, and 22 [foot lengths]. We didn't furnish our own tools and did not rent them from Mr. Simpson, they was already his and he give them to me to cut with;" the trees were to be cut anywhere from 18 inches to 2 feet above the ground, or if the tree was bad and leaning, it would have to be cut higher than that; and if the tree was straight, Hightower "was to cut it with the least possible waste, unless it endangered the saw or the men. He was to use his own judgment about the height to cut the tree. He was supposed to know how to cut timber. He was a log cutter, and he knew about this kind of cutting, and we [Lokey & Simpson] didn't advise him about it one way or the other."

Under the above-stated evidence, the fact that Lokey & Simpson furnished their own tools for Hightower's work fails to show that Hightower was not an independent contractor. *Zurich General Accident &c. Ins. Co.* v. *Lee,* supra, headnote 2 (c). It is true that Lokey & Simpson testified that Hightower hired his own helper, and that Hightower swore that his helper was not hired

by him and was paid by Lokey & Simpson. However, that conflict in the evidence was about an immaterial matter, just as was the fact that Hightower worked with tools furnished by the partnership of Lokey & Simpson. Moreover, Hightower failed to testify that he did not have the *right* to hire, pay, and discharge his helper. Another immaterial conflict in the evidence is as to the lengths into which the trees were to be cut. Hightower, himself, testified that he was not shown by Simpson "how" the trees "were to be cut or anything like that; he wasn't overseeing us." In *Lampton* v. *Cedartown Co., 6 Ga. App.* 147 (2) (64 S. E. 495), this court held that where the owner of a building to be constructed furnishes to a contractor the material for the building, or stipulates in the contract that the work of constructing shall be performed by the contractor according to plans and specifications of an architect, and to the satisfaction of the engineer of the owner, such facts do not indicate that the builder is the servant of the owner of the building. The cases cited in behalf of the defendant in error are differentiated by their facts from the case at bar. In my opinion the undisputed evidence required a finding that the claimant was an independent contractor and not entitled to compensation. I think that the court erred in affirming the award of the Department of Industrial Relations.