34347. ALEXANDER-BLAND LUMBER COMPANY *et al.*
*v.* JENKINS.

DECIDED FEBRUARY 28, 1953.

682

*Jesse W. Walters, Peacock, Perry & Kelley, Ernest C. Britton,* for plaintiff in error.

*Smith & Gardner,* contra.

SUTTON, C. J. The sole question for determination here is whether there was any competent evidence adduced at the hearing to support the finding of the Board of Workmen's Compensation that the claimant and Henson, under whose supervision the claimant was working when injured, were then employees of Alexander-Bland Lumber Company.

As ruled in *Cooper v. Dixie Construction Co.,* 45 *Ga. App.* 420 (1) (165 S. E. 152): "Where, under a contract between an employer and a contractor for the doing of certain work, the employer retains the right to direct or control the time and manner of executing the work to be done thereunder, the relation of master and servant exists, and not the relation of employer and independent contractor." The test is whether the contract gives, or the employer assumes, the right to control the time, manner, and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract. *Yearwood v. Peabody,* 45 *Ga. App.* 451 (2) (164 S. E. 901).

There are numerous statements in Henson's testimony which are contended to have authorized the finding that he was the servant of the lumber company rather than an independent con-

tractor, such as the following: "Q. Will you state to the director just what your understanding was at the time you went in the employ of Alexander-Bland Lumber Company; what your rights were and their rights were? A. Well, what rights I had— I was working for them and they could fire me at any time. They'd tell me what to do and I had to do what they said if I stayed there. You know, if I was working for you, you'd have a right to tell me what to do and have the right to fire me. Q. And that was your understanding? A. That's right. Q. Of your contract that you had with them when you went to work for them? A. Yes, sir."

There was other testimony by Henson to the effect that the lumber company told him what to do and how to do it, where to go, and how much time he had to cut a tract. But each of these statements was further amplified. Henson was shown a particular tract of timber, told what size of timber had been purchased or leased, and told how much time the lumber company had to get the timber out. After testifying that he was shown where the tract on which the claimant was injured was located, and was told to cut all the timber in the particular tract measuring ten inches in diameter at a foot above the ground, Henson further testified on cross-examination: "Q. What else did he tell you? A. That's all he told me. Q. Did he tell you how to cut this timber, other than what you have already said; did he tell you how long to cut it? A. He told me to cut it; he wanted it in boards and 2 by 4's and things like that. Q. Did he say he wanted 1 by 8's? A. No, sir. Q. What did he tell you about cutting this timber? A. I told you what he told me. Q. Did he say anything other than he wanted you to cut this tract of timber in boards and 2 by 4's and 1 by 4's? No, sir."

Also, while Henson testified that he would have to do anything the lumber company told him to do, that he would have hired anyone the lumber company told him to hire, and that he would have fired anyone if the lumber company told him to do so, he further testified that he hired and fired his own employees, and he knew of nothing in his parol contract with the lumber company as to hiring and firing his employees. He testified that he was not told how many to employ, or how many

hours per day or days per week to work, and that he would have to cut all the timber of the specified size on a particular tract to carry out the terms of his contract.

Henson was, in effect, a party to the case. The hearing director entered an award against him, and his interest was opposed to that of the lumber company. Resolving the inconsistencies and ambiguities in his testimony against him, as a party to the case, it appears that the contract between Henson and the lumber company was substantially as follows: Henson was to cut all timber of a certain diameter or larger, measured at a given distance above the ground, on timber tracts leased or owned by the lumber company and to be pointed out to Henson if he did not know where they were. The lumber company was to furnish a sawmill, and Henson was to maintain and operate it, supplying the logging equipment and labor himself. Henson was to receive $21.50 per thousand feet for 1 by 4's; $26.50 per thousand feet for 2 by 4's; and $27 per thousand feet for boards. Henson in cutting the trees was not required to saw them to any certain dimensions, other than standard dimensions as required by the average lumber company, such as 2 by 4, 1 by 4, etc., in lengths of even numbers of feet. While the lumber company desired as many wide boards as it could get, they left it to Henson's judgment as to which of the standard sizes of lumber the logs should be sawed into, but they agreed to pay more for boards than for 2 by 4's and 1 by 4's. Nothing was mentioned as to the firing or hiring of help by Henson. The contract itself did not give the lumber company the right to control the time, manner, or method of the work specified for Henson to do.

It is contended that the conduct of T. E. Kemp, the lumber company's forester or woods rider, amounted to an assumption by the lumber company of the right to control Henson's manner and method of working. Kemp would inspect the tract to determine whether any trees of the size purchased by the lumber company had been left by Henson, and to ascertain whether the lumber was being sawed too thick or too thin; this Kemp referred to as "controlling the waste." If any of the trees purchased were left standing, Kemp would tell Henson or Henson's employees to cut them; and if the lumber was being sawed too

thick or too thin, or not up to standard, he would tell Henson that something was wrong with the mill or that he was turning it too much. However, as ruled in *Poss Lumber Co. v. Haynie*, 37 *Ga. App.* 60, 62 (139 S. E. 127), "The lumber company was entitled to see that the work was performed in accordance with the contract, and had the right, as owner, to caution against waste of the timber, provided there was no interference as to the particular method by which the work was to be done or as to the means by which the given result was to be accomplished, and it was the privilege of the company to exercise such rights as incidents of the contract, without becoming liable as the master or employer of Campbell's [the sawmill operator's] laborers."

It is also contended that the facts that Kemp would sometimes ask Henson to come with him to look at a tract of timber and advise as to what it would cut, but that Henson was not paid for such services, show that Henson was an employee. However, when taken in connection with the fact that Henson was not at the mill on the Thursday when the claimant was hurt, and did not return until the following Monday, this evidence shows that Henson's time was his own, and that he could come or go as he pleased, whether on his own business or on inspection trips with Kemp which were of benefit to the lumber company.

While each such case as this must be determined upon its own particular facts, we think the facts in the present case match those in *Zurich Ins. Co. v. Lee,* 36 *Ga. App.* 248 (136 S. E. 173), *Irving v. Home Accident Ins. Co.,* 36 *Ga. App.* 551 (137 S. E. 105), *Bentley v. Jones,* 48 *Ga. App.* 587 (173 S. E. 737), *Scott v. Minor,* 55 *Ga. App.* 714 (191 S. E. 263), *Banks v. Ellijay Lumber Co.,* 59 *Ga. App.* 270 (200 S. E. 480), and *Mauney v. Collins,* 64 *Ga. App.* 330 (13 S. E. 2d, 97), more closely than they resemble the facts in *Ocean Accident &c. Corp. v. Hodges,* 34 *Ga. App.* 587 (130 S. E. 214), *Love Lumber Co. v. Thigpen,* 42 *Ga. App.* 83 (155 S. E. 77), *Home Accident Ins. Co. v. Daniels,* 42 *Ga. App.* 648 (157 S. E. 245), *Liberty Lumber Co. v. Silas,* 49 *Ga. App.* 262 (175 S. E. 265), and *Lokey & Simpson v. Hightower,* 57 *Ga. App.* 577 (196 S. E. 210). One distinction between these two lines of cases is that the employees in the

686

latter group were engaged preponderantly in manual labor, exerting largely muscular effort for their employers; and, in such a case, where the contract between the parties is inconclusive or indefinite, the finding of an employer-employee relationship is aided by the inference that the employer has the right to direct and control the manner in which such work is performed. On the other hand, the persons found to be independent contractors rather than employees, in the first group of cases above cited, were engaged, as was Henson in the present case, in fairly complex operations of cutting, hauling, and sawing timber, which required skill and experience and executive ability; and in such cases it cannot be inferred that the lumber company or the owner of the timber being cut has retained the right to control the time, manner, and method of performance.

The finding by the Board of Workmen's Compensation that Henson was an employee or servant of Alexander-Bland Lumber Company, so that the claimant was also an employee of the lumber company, was not authorized by the evidence, for it was not shown that the lumber company either retained, under the contract, or assumed, by their conduct, the right to control the time, manner, and method of executing the work to be done by Henson. Accordingly, the superior court on appeal erred in affirming the award of the board.

*Judgment reversed. Felton and Worrill, JJ., concur.*