37253. MALCOM *v.* SUDDERTH.

DECIDED NOVEMBER 20, 1958.

*William F. Woods*, for plaintiff in error.

*Joseph E. Cheeley*, contra.

NICHOLS, Judge. The only ground of the appeal which the employer insisted upon before the judge of the superior court was that there was not in the record sufficient competent evidence to warrant the award of compensation entered up by the State Board of Workmen's Compensation.

The record is replete with the evidence and it is conceded that every element of proof necessary to sustain the award is present, except that the employer contends that he was not an "employer" within the meaning of the workmen's compensation law and Code (Ann.) § 114-101 because he did not employ ten persons in carrying on his sawmill business.

The evidence showed without dispute that five persons were employed at the immediate site of the sawmill and that the employer had another employee logging with a mule. There was a conflict as to whether on the day the claimant was injured a lad by the name of Jack Dodd was employed by the employer and actually working at the sawmill; as to this issue the claimant testified the boy was working at the mill on that particular day. He was corroborated by the employer's witness, Billy Sudderth. The employer denied that the boy was, at that time, or for considerable time prior to the day the claimant was injured, employed by him or at the sawmill. A claimant's witness, William Malcom corroborated him. Five other people, Grady Sudderth, Ralph Wheeler, Winton Sudderth, Gene Kendricks, and Billy Sudderth were employed to perform services necessary in carrying on the business of the sawmill. The employer contends that these laborers were independent contractors and not employees. Upon the decision of this single question hinges the determination of whether ten employees were engaged in the operation of his sawmill business. The latter question is, as stated, the ultimate and only question to be passed on by this court.

If there is competent evidence in the record from which the single director and the Compensation Board could have entered

an award predicated on the finding of fact that the five people, or any three of them, were in fact employees, then the award must stand and the judgment of the superior court judge setting it' aside must be reversed. *South* v. *Indemnity Ins. Co. of North America,* 41 *Ga. App.* 827 (155 S. E. 48) ; *Sears, Roebuck & Co.* v. *Griggs,* 48 *Ga. App.* 585 (5) (173 S. E. 194). Or if, from the facts proven on the hearing before the director, it could be legitimately inferred that those laborers were in fact employees the award must stand. *Travelers Ins. Co.* v. *Reid,* 54 *Ga. App.* 13 (186 S. E. 887).

In determining this question the purpose of the act must be considered and to that end it must be given liberal construction. A specific rule springing from this principle is that "This court, in reviewing an award by the full board denying compensation, must accept that evidence most favorable to the employer; and if, so viewed, it authorizes an award denying compensation under the provisions of the Workmen's Compensation Act (section 114-101 et seq.) it must be affirmed." *Merry Bros. Brick &c. Co.* v. *Holmes,* 57 *Ga. App.* 281 (195 S. E. 223).

The law does not permit the employer, simply by designating certain of his employees independent contractors, to by-pass the workmen's compensation law, and this is true, although the employer may bona fide believe that the end referred to may be accomplished in the manner mentioned.

We are cognizant of the fact that the employer testified that Grady Sudderth, Ralph Wheeler, Winton Sudderth, Gene Kendricks, and Billy Sudderth were independent contractors and not his employees. But there the rule must be considered that the character of a contract, and the relationships created by its terms is determined not by what the parties call the instrument, but by the evidence as to its contents and the circumstances surrounding its execution and performance. *Rhodes & Son Furniture Co.* v. *Jenkins,* 2 *Ga. App.* 475 (58 S. E. 897) ; *Oaks* v. *Singer Sewing Machine Co.,* 17 *Ga. App.* 517 (87 S. E. 719). "In determining the real character of a contract, courts will always look to its purpose, rather than to the name given it by the parties." *Hays* v. *Jordan,* 85 *Ga.* 741, 748 (11 S. E. 833, 9 L.R.A. 373).

686

It must also be considered that triors of fact are not compelled to accept the sworn version of a witness to a particular fact, much less the witness's construction of a contract, if there are facts and circumstances proven from which a contrary conclusion may be reached. *Scott & King* v. *Ayers*, 66 *Ga.* 254. "Nor is the Department of Industrial Relations bound in every case to accept the literal statements of a witness before it merely because such statements are not contradicted by direct evidence. Implications inconsistent with the testimony may arise from the proved facts; and in still other ways the question of what is the truth may remain as an issue of fact despite uncontradicted evidence in regard thereto." *Cooper* v. *Lumbermen's Mutual Cas. Co.*, 179 *Ga.* 256, 260 (175 S. E. 577).

The test of whether persons employed in the business of another are independent contractors is determined under various rules of law, some of which are applicable to the facts of the instant case. Often the rule that an independent contractor is employed to obtain an end result in his own way is misconstrued in that the word "result" is given a meaning different from that intended by the workmen's compensation law. The true rule is: "Generally speaking, an independent contractor is one who, in rendering services, exercises an independent employment or occupation, and represents his employer only as to the results of his work, and not as to the means whereby it is to be accomplished. The word 'results', however, is used in this connection in the sense of a production or product of some sort, and not of a service." Maryland Casualty Co. *v.* Hunt (Tex. Civ. App.) 271 S. W. 929, 932.

The cardinal rule, frequently applied, is whether the employer has the right to control or direct the manner and time in which the work is performed. *Bentley* v. *Jones*, 48 *Ga. App.* 587 (173 S. E. 737); *Yearwood* v. *Peabody*, 45 *Ga. App.* 451 (164 S. E. 901).

Another important rule pertinent to the discussion of whether the relationship existing between an employer and those in his service is that of employer and independent contractor is well stated in 99 C. J. S. 342, § 98 (55), "In order for one to be an independent contractor so as to be outside the protection of

the workmen's compensation act, the contract of employment must itself be one, which contemplates a definite beginning, continuance, and ending."

We find the pronouncement in *Mitchem* v. *Shearman Concrete Pipe Co.* 45 *Ga. App.* 809 (1) (165 S. E. 889), "Where one is employed generally to perform certain services for another, and there is no specific contract to do a certain piece of work according to specifications for a stipulated sum, it is inferable that the employer has retained the right to control the manner, method, and means of the performance of the contract, and that the employee is not an independent contractor."

We have previously seen that the work done by Ralph Wheeler, Gene Kendricks, and the Sudderth boys was so simple as to require no continuous control or supervision and there were circumstances and some positive evidence from which it could be inferred and concluded, that the employer, Sudderth, exercised general supervision and control of their labors. In *Swift & Co.* v. *Alston,* 48 *Ga. App.* 649, 651, 653 (173 S. E. 741), it is held: "The testimony of the officers of the defendant company that they at no time directed, controlled, or assumed any control over Oliver in the means, manner, and time of doing his work is itself only circumstantial evidence to be considered as to whether the company had the right to so control the work, for the test is *not* whether the defendant *did in fact control* and direct plaintiff in his work, but is whether it *had the right,* under the employment, taking into consideration the circumstances and situation of the parties, and the work, to so control and direct him in his work. . .

"To constitute Oliver an independent contractor it must at least appear that the work to be performed was committed exclusively to his discretion. The nature of the work done by Oliver no less than the agreement or the circumstances surrounding the work, failed to show a foundation upon which to hold that he was an independent contractor."

According to the evidence in the present case the contracts under which Grady Sudderth, Ralph Wheeler, Winton Sudderth, Gene Kendricks, and Billy Sudderth were employed did not stipulate or fix the period of their employment, did not re-

quire of them ultimate result, but contemplated only that they render daily routine services of a simple manual nature necessary in carrying on the employer's sawmill business.

Probably the most helpful rule is supplied by the genius and sense of Chief Judge Sutton: "One distinction between these two lines of cases is that the employees in the latter group were engaged preponderantly in manual labor, exerting largely muscular effort for their employers; and, in such a case, where the contract between the parties is inconclusive or indefinite, the finding of an employer-employee relationship is aided by the inference that the employer has the right to direct and control the manner in which such work is performed. On the other hand, the persons found to be independent contractors rather than employees, in the first group of cases above cited, were engaged, as was Henson in the present case, in fairly complex operations of cutting, hauling, and sawing timber, which required skill and experience and executive ability; and in such cases it cannot be inferred that the lumber company or the owner of the timber being cut has retained the right to control the time, manner, and method of performance." *Alexander-Bland Lumber Co.* v. *Jenkins*, 87 *Ga. App.* 678, 685 (75 S. E. 2d 355).

And where, as here, the person employed is only engaged to do piece work, certain other rules must be applied. The court has held that employment of one to do piece work is not conclusive of his status either as an employee (*Maryland Cas. Co.* v. *Radney*, 37 *Ga. App.* 286, 288, 139 S. E. 822), or as an independent contractor (*Employer's Liability &c. Corp.* v. *Smith*, 86 *Ga. App.* 230, 233, 71 S. E. 2d 289).

According to the weight of authority, one of the most significant guides in classing a piece worker and an employee or an independent contractor is found in the answer to the question: does he conduct his own independent business or merely work in carrying on that of his employer. In Maryland Casualty Co. v. Kent (Tex. Civ. App.) 271 S. W. 929, 932, supra, it is said: "A contractor is any person who, in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods without submitting

himself to their control in respect to all its details. The true test of a contractor would seem to be that he renders service in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished."

That a piece worker uses the employer's equipment, standing as an isolated or independent fact, is indicative of but not conclusive as to whether he occupies as to his employer the relationship of an employee, and the fact that the employee uses his own equipment and motive power in performing services for his master does not give to him the status of an independent contractor. *Ocean Accident &c. Corp.* v. *Hodges,* 34 *Ga. App.* 587 (130 S. E. 214).

Where the manufacturer of a commodity employs another, whether for a price per hour or by the piece, to perform a comparatively simple manual function in process of producing the commodity, the person engaged to render such service is usually classed as an employee and not as an independent contractor. *Alexander-Bland Lumber Co.* v. *Jenkins,* 87 *Ga. App.* 678, supra. Where such person is through experience, familiar with the detail of the work he is employed to do, and the contract of employment requires him to continually give such dispatch to his work as will prepare the commodity for manufacture in such quantities as will coordinate with other processes of production, the employer exercises all of the control of the details of his work necessary to classify him as an employee. In this connection refer to 99 C. J. S. 350, § 104; Industrial Commission *v.* Hammond, 77 Colo. 414 (236 Pac. 1006). In *Lokey & Simpson* v. *Hightower,* 57 *Ga. App.* 577, 580 (196 S. E. 210), it is held: "In the present case, about the only thing that we find was left to the discretion of the claimant was as to how high from the ground each tree should be cut. But it can hardly be conceived that since the nature of his employment was merely the application of physical labor, and that since the defendant furnished him his tool, and directed him as to what trees to cut, that the defendant would not have had the right, and that it was impliedly so understood between them, to direct him to cut a tree in a

manner other than he would have cut the same if the defendant thought that his manner or cutting would amount to a waste. It is true that it further appears that the claimant did not and was not required to work on the same schedule of hours as other employees of the defendant, and that he was at liberty to work at irregular hours. On the other hand the inference is clearly warranted that he could be required to work sufficient time to keep the mill supplied with logs for the purpose of cutting them into shingles. The mere fact that he did not have regular hours would not demand a finding, when taken in connection with the other facts of the case, that he was an independent contractor rather than a servant."

The rules of law just referred to are made peculiarly applicable to this case by portions of the employer Sudderth's testimony that Grady Sudderth and Wheeler, employed to fell the timber, and Winton Sudderth and Kendricks, employed to log the mill, knew how to do the work they were employed to do, and his further testimony in answer to questions propounded by the director, as follows: "Director: Well, I'm just trying to find out what their duties were. Now, Ralph and Grady, I believe, did the cutting of the timber? Witness: Yes, sir. Director: You bought the timber and you contracted with the owner of the land to cut it at six inches? Witness: Yes, sir. Director: Which gives you a two-by-four like you said? Witness: That's right. Director: Then you hired Grady and Ralph to cut it and they were told to cut it at six inches and they weren't supposed to cut anything else? Witness: Yes, sir. Director: And you paid them so much a thousand for that? Witness: Yes. Director: Then, I believe you stated that Winton and Gene would log the mill with your tractors? Witness: Yes, sir. Director: And to keep the mill going, they had to log it? Witness: Yes, sir. Director: Then this boy, I believe hauled the lumber from your mill on your truck and you paid him so much a thousand for hauling? Witness: Yes, sir."

Grady Sudderth testified in reference to the requirements that he and Wheeler fell the timber so as to coordinate with or keep pace with the other operations employed in the operation of the sawmill that they were required to keep ahead of log-

gers. The contracts of employment here dealt with required Grady Sudderth and Wheeler to fell the timber 6 inches from the ground and to keep pace with the loggers, and Winton Sudderth and Kendricks, the loggers, to log the mill so as to keep pace with the process of sawing the timber into lumber, and Billy Sudderth, as the lumber accumulated, to haul it to the place designated by the employer.

It will be noted that all of the equipment, sawmill, trucks, tractors, mule and other articles necessary to the mill except one lone chain saw were owned by the employer Sudderth. That saw was according to the evidence owned by Grady Sudderth and Ralph Wheeler, but they used the employer's equipment in trimming the tips and limbs from the trees.

The fact that the undisputed testimony showed that at times employees of E. W. Sudderth other than the Sudderth boys, Wheeler and Kendricks, worked in felling the timber and logging the mill indicated that all of the employees were engaged on the same basis and that none were independent contractors. There was evidence that some of those designated by the employer as independent contractors rendered other services in carrying on the sawmill operations generally. This was inconsistent with the relationship of employer and independent contractor. It is hard to conceive of a state of more complete control of the manner and time in which an employee performs his allotted work than the practice of the employer to shift him from a task of one nature to that of another, as the exigencies of the manufacturing process about which he is employed require. No fact could be more consistent with the relationship of employer and employee, or more repugnant to that of employer and independent contractor.

The employer on his own truck hauled to the sawmill gasoline which was used in the operation of machinery and trucks used by those he insisted were independent contractors. While he claimed that the gasoline was paid for by Winton Sudderth, Kendricks, and Billy Sudderth, some of it was admittedly used in starting his own sawmill. A small but significant fact—the proverbial feather in the wind, a circumstance properly considered by the triors of fact. No witness was produced to prove

the gasoline was purchased by any of the alleged independent contractors, and the testimony showed that the employer had listed gasoline in his income tax as one of the expenses of his business. The provisions of Code § 38-119 are applicable.

The director may have inferred that a failure to produce impartial witnesses as to the purchase of the gasoline, indicated that if such witnesses were produced their evidence would be adverse to the employer's interest. There are still other facts of legal significance that would raise the inference that the relationship between the employer and all who worked at the mill and in connection with its operation, was that of employer and employee, and that the employer directed all of their work. This conclusion is supported by the fact that when the felling process lagged he sent employees to aid in that work, and when the logging fell behind he assigned his employees to assist in the dispatch of that work.

The employer testified that he had a time book at his home which would probably show the names of his employees on the day the claimant was injured, but failed to produce it. He professed to be confused as to what was demanded by a notice to produce which the claimant caused to be served upon him. There is a rule of evidence, "Where a party has evidence in his power and within his reach, by which he may repel a claim or charge against him, and omits to produce it, or, having more certain and satisfactory evidence in his power, relies on that which is of a weaker and inferior nature, a presumption arises that the charge or claim is well founded; but this presumption may be rebutted." Code § 38-119. The rule was clearly applicable to the situation shown by the record.

The court has carefully examined each of the authorities cited and relied on by the employer, and none requires a different holding than that here pronounced.

*Poss Bros. Lumber Co.* v. *Haynie*, 37 *Ga. App.* 60 (139 S. E. 127) is distinguishable on its facts from the instant case. There one man was engaged to carry on with his own labor the entire operation of a sawmill, including the felling of the timber, logging the mill, sawing the lumber and delivering the same. The work committed to him required executive skill and was not

purely manual as in this case. The contract there was to carry on an independent business, a complete enterprise, not, as in this case, to perform physical functions in carrying on the employer's business. The same distinguishing features, and others, make *Love Lumber Co.* v. *Thigpen,* 42 *Ga. App.* 83 (155 S. E. 77); *Home Accident Ins. Co.* v. *Daniels,* 42 *Ga. App.* 648 (157 S. E. 245) inapplicable to the facts of this case.

In *Maryland Cas. Co.* v. *Radney,* 37 *Ga. App.* 286, 288, supra, one was engaged to haul logs as he chose, when he chose and from where he chose, on his own truck and with his own motive power. In this case Billy Sudderth was employed to haul lumber from a place designated to a destination chosen by his employer, as the mill turned out the lumber, on the employer's truck, and under such circumstances that it was a questioned fact as to whether he or his employer really furnished the gasoline for the purpose. There were circumstances from which it could be inferred that he did.

*Scott* v. *Minor,* 55 *Ga. App.* 714 (191 S. E. 263) is not authority or even persuasive of a different view from that here stated. There as in *Poss Bros. Lumber Co.* v. *Haynie,* 37 *Ga. App.* 60, supra, the owner engaged another to operate a sawmill, at the latter's expense, and with his own labor. Complete control of the whole sawmill was left to the operator's judgment even to the dimension in which the lumber was sawed. He performed no mere physical function connected with his employer's business, as is true in this case, but performed a service productive of an ultimate result.

The same reasoning is applicable to the case of *Banks* v. *Ellijay Lumber Co.,* 59 *Ga. App.* 270, 273 (200 S .E. 480).

In none of the cases cited by the employer were elements of control and supervision present as in the instant case, and in all of them the work required was that which produced an end result, rather than a service which was a mere manual function to be performed in carrying on the employer's business.

There was ample competent evidence to support, if it did not demand, the finding that all of the workers employed in the employer's sawmill business occupied the relationship to him of

employer and employee, and hence he employed as many as ten employees in that business.

The trial judge erred in setting aside the award of the Workmen's Compensation Board.

*Judgment reversed. Felton, C. J., and Quillian, J., concur.*